a. Good morning. Our first case today is number 23-1987, Judith Henry v. Essex County, et al., Mr. Ross. Thank you, Your Honor. Case in Ross for the federal defendants, and I'd like to reserve three minutes for rebuttal. Granted. The district court should have dismissed the claims against the federal defendants because plaintiff failed to state a claim against those officers. To the extent plaintiff's claims should be construed as arising under Bivens, those claims should have been dismissed because the Supreme Court has never recognized any such a remedy against U.S. Marshals Service officers or specially deputized officers in the U.S. Marshals executing a valid arrest warrant. Ample administrative remedies and the risk of disrupting law enforcement activities, particularly with respect to the cooperation between federal and state law enforcement authorities when apprehending fugitives, should counsel the court's hesitation before inferring such a judicial remedy in this case. This was kind of an abnormal warrant. I mean, years later, there was a 93 person wanted, and now we're hearing many years later, was there any kind of notice that they had that this was so abnormal that they should look at it differently or look at it more in depth to figure out what was going on? Your Honor, I don't think the date of the warrant itself makes any legally dispositive difference. In any event, plaintiff has not alleged any facts that would have caused the federal defendants to have any pause. The six federal defendants here, including the two specially deputized officers who actually executed the warrant, received information identifying a Judith Henry in New Jersey, and they acted upon that information. The plaintiff's allegations themselves did not give the officers any reason to question either the validity of the warrant or the information attached to that warrant identifying plaintiff here. How long was Ms. Henry in custody of the marshals? According to her allegations, the complaint states or suggests that they were in or she was in the marshal service custody for approximately a day. Her allegations with respect to the federal defendants here states simply that they apprehended her on August 22, 2019, and delivered her to the Essex County Sheriff's Office the same day. She was subsequently transferred to, I believe, the Essex County Prison, per her complaint, the same day, and then she was held by state officials for some extended period of time. But plaintiff's complaint does not state any allegations with respect to the federal defendants beyond her initial apprehension. So to the extent there was any concern or problem with her subsequent detention, that would not run against the federal defendants because her allegations do not state that they had any role with respect to that ongoing detention. That's particularly true with her transfer to subsequent facilities in Pennsylvania. Judge Hayden seemed to be really concerned that she didn't have enough information to make a decision at the time of the hearing. What was the government's response at that point in time? I think that the relevant question, Your Honor, on a motion to dismiss is whether plaintiff's allegations themselves state a cognizable legal claim. And plaintiff's allegations here amount to no more than conclusory allegations of some sort of conspiracy between federal and state officials, as well as, sorry, essentially amounts to conclusory allegations and stating causes of action against the federal defendants. Although Judge Hayden suggested that more information was needed, it's incumbent upon plaintiff to provide those kinds of factual allegations in order to survive a motion to dismiss. The Supreme Court in Twombly and Iqbal clearly explained the relevant standards required to survive such a motion. And plaintiff's allegations here amount, certainly do not amount to plausible allegations of a conspiracy, much less do they actually state a viable cause of action. What additional information was she looking for? That's not clear. I think Judge Hayden said she was, quote, very taken with the Bivens argument itself. But that's a legal question, just as the federal defendant's entitlement to qualified immunity is a legal question. And in many instances, you know, a case is further developed subsequent to a motion to dismiss. And that's the purpose of discovery. But as the Supreme Court in Mitchell v. Forsyth and Behrens v. Pelletier has made clear, federal to survive the burdens of discovery if a complaint does not state plausible allegations of a violation of clearly established constitutional rights. And this court in Graber and George made clear that even when a district court states that further discovery is necessary to flush out particular legal claims, implicit in that conclusion is the legal determination that a constitutional violation has occurred. That is simply not the case here. Moreover, apologies, I lost my train of thought. You get old like me, you can do that real easy. Let's assume for a minute that we accept your Bivens argument. What happened here was egregious. There should be a remedy for this sort of thing. Is there one? So the plaintiff does have allegations against the state defendants, which remain pending in district court. She may also seek to amend her complaint to pursue FTCA claims against the United States or the Marshals Service. You know, her response brief expressly indicates an intention to do so. She's filed an administrative claim against the Marshals Service, which so far as I understand, remains pending. And so your argument isn't that there's no potential remedy here. I mean, you're going to make arguments on those issues in due course, I would assume. But your argument here isn't that that there's no cognizable claim anywhere. It's just that there's not a cognizable Bivens claim and that your clients are entitled to qualified immunity, even if there were. Even if there was a Bivens claim, that's correct, Your Honor. I think it's worth remembering that the claims against the federal defendants here are against individual officers in their individual capacities. So these are damages claims against officers. Whether a plaintiff has a claim against the United States or against the Marshals Service is a completely separate question. And so your supplemental briefing said if there is something that's under the Federal Tort Claims Act. I'm sorry, if there is to be a possible claim for money damages that would be under the Federal Tort Claims Act, isn't that right? What you mentioned in your supplemental briefing? I think if I think that's right, Your Honor. So the plaintiff could amend her complaint to state such claims. And it is worth noting that to the extent that the facts alleged here are egregious, most of those allegations run against the state defendants in this case. And it's worth remembering that none of the state defendants are before this court here on appeal. And they expressly declined to file a brief in this appeal. So those proceedings continue in district court. And I believe discovery has continued apace, particularly with respect to those defendants. And the NJCRA doesn't offer a cause of action? Not against the Westfall Act carve out for constitutional violations? I don't believe so, Your Honor. No court has held that 28 U.S.C. 2679 B2A, which is the exception in the Westfall Act for claims, quote, brought for a violation of the Constitution, would encompass a so-called converse 1983 cause of action running against federal officials acting under their federal authority. So have any courts rejected the argument? Courts regularly dismiss claims alleged against federal officers in their excuse me, when acting under color of federal law. I don't believe a court of appeals has ever held as much, but district courts regularly reject those claims. And for good reason, to permit a state cause of action against federal officials when acting under their federal authority invites a number of difficult preemption and potentially intergovernmental immunity. Those kinds of questions are not fully briefed before this court, but if anything, it counsels hesitation before this court going out to decide those difficult questions. It seems like the district court may have relied on documents or information that Ms. Henry provided in her brief in opposition to the motion to dismiss. Should we send it back for reconsideration as a motion for summary judgment or can we just decide it now? I think the most appropriate course, given that the issues are fully briefed before this court, is to decide the merits issues now. The district court seemingly did consider various interrogatories that plaintiff had attached to her opposition to the federal defendant's motion to dismiss and didn't provide any notice that she was converting the motion to dismiss to a motion for summary. Because the substantive issues are fully presented before this court, it seems to me the most appropriate course would be to actually resolve those issues now rather than send the issue, send the question back to the district court. In particular, because the Supreme Court in Hernandez articulated that whether a Bivens remedy exists at all is antecedent to other questions presented in the case. So it's most appropriate to determine whether plaintiff actually has a viable cause of action, which is not affected at all by any factual information that she may have appended to her opposition. Are you suggesting that Bivens is not a viable cause of action here simply because the search was done pursuant to a valid, albeit erroneous, warrant? So it's all it's also because, Your Honor, that officers executing the warrant in this case were acting under a legal mandate different from that in Bivens, Carlson and Bivens, especially deputized officers serving on a marshal service task force, which is a separate set of statutory authorities that Congress has expressly given to the marshal service to apprehend fugitives. And that's a meaningful difference that the Fourth Circuit, or excuse me, the Tenth and Eleventh Circuits have found persuasive. And just yesterday, as we informed the court, the Eleventh Circuit held that no Bivens remedy would lie against officers in the marshal service. Is the Eleventh Circuit the only other circuit to have so held? The Tenth Circuit did as well in the Logston opinion, which is cited in our reply brief, and a panel of the Sixth Circuit in Kane held as much as well. That is an unpublished decision, but I think Judge Ketledge's reasoning in that case is quite persuasive and reflected in the Tenth and Eleventh Circuit's decisions. So you're just seeking to have us join the chorus, so to speak? I think that's the most straightforward resolution of the case, Your Honor. As our brief explains, this case presents a new context for exactly the reason you asked. The officers here were acting pursuant to a valid warrant supported by probable cause. The Supreme Court has clarified that when a constitutional right is different in any meaningful way from that previously recognized by the Supreme Court for a Bivens claim, then that's a meaningful new context. Now, Bivens itself concerned the Fourth Amendment protection against unreasonable searches and seizures. This case involves the requirement that a warrant be supported by probable cause. And that's a meaningful difference, namely that the relevant constitutional standards for both of those kinds of claims vary significantly, and those are exactly... Significantly, I don't know. It depends on how thinly you slice it. They're both Fourth Amendment cases. That makes them somewhat similar. But this court in Vanderklok expressly rejected that kind of argument, Your Honor. So to the extent that you're slicing the cheese thinly, I think these are two different kinds of cheese. Thank you, Mr. Ross. Thank you. Let's hear from Ms. Adams. Good morning. May it please the court, Attorney Tisha Adams, on behalf of the plaintiff, Judith Henry. As the court has indicated, this is an egregious violation of Ms. Henry's constitutional rights. And we request that... The judge was upset at what happened here, but the marshals here appeared to have had Ms. Henry in their custody for what, less than 24 hours? Indeed. So if that's the case, maybe why are they in this whole scene? Well, they are involved because the position of the plaintiff is that the warrant itself was not valid, that there was not probable cause to arrest my client, Ms. Judith Henry. There was... That's not really their job. Their job is to execute the warrant, right? Their job wasn't to figure out who the right person was, et cetera. I mean, you know, in other words, it appears somebody or some group of people did something terribly wrong because they got the wrong woman. I think everyone agrees on that. But why is it the fault of the people who get the piece of paper that says, go pick up Judith Maureen Henry at this address? And they have the right picture, do they not? Well, that has not yet been determined. It appears that through discovery that they were just provided the warrant in it of itself. But somebody at the outset messed up, but the marshals are down the line in terms of here's a warrant, go execute it, which is what they do every day. Well, respectfully, plaintiffs disagree. They were on the front lines. They were the ones that went to Ms. Henry's home with their guns drawn. No, no, you're missing my point. They didn't make the call to issue the warrant. The warrant was issued and given to them, correct? But they made the call to execute that warrant. And it is the role of law enforcement to serve and protect the people. And here they violated the constitutional, her constitutional rights as opposed to serving and protecting. And when they took her into custody, they had the opportunity to perform a fingerprint check, which would have totally prohibit all the rest of this from happening. She would not have had to sit in custody for more than 15 days. She probably wouldn't even had been in custody for over an hour had they just taken the opportunity. Is that something that the marshals normally done? That was done on what, September 3rd? In August, August 23rd, I believe. When was the fingerprint came in? Was it September 3rd? Yes. And that was when Ms. Henry was where? She was already in the State Correctional Institute in Muncie, Pennsylvania. She had already been transported across state lines and she had been in custody well over two days, I believe, because the second was a holiday. No one even bothered to fingerprint her. So she had to wait till the full staff arrived for the fingerprints to be conducted. So you have an innocent individual sitting in custody in jail for a whole 15 days. We can well understand why she was upset, but in terms of qualified immunity, what's your argument with respect to the marshals as to why qualified immunity, which should be dealt with early on, should be denied? Well, I believe that it should be denied at this point because discovery is ongoing with respect. And what else could you possibly find with respect to the marshals that would qualify and fit within a Bivens action, for example? Well, through discovery, we would find whatever what their procedures were with respect to what they were required to do under whether it was the U.S. Attorney guidelines with respect to making certain that they did not violate Ms. Henry's constitutional rights and to what extent each of those individuals were personally involved with respect to the violation of Ms. Henry's constitutional rights. That is not clear. And that is what Judge Hayden had stated in her opinion. And that's why she ordered that discovery continued. There's a Supreme Court case only from what, 45 years ago, Baker v. McCollum, which seems to have a mistaken identity arrest supported by warrant. And the Supreme Court found that there was no constitutional injury. Why would that? How would you distinguish, Baker? Well, I think in this particular case, of course, first of all, Ms. Henry is a resident of this. How would you distinguish, Baker? Well, in this particular case, the warrant, the I'm sorry, the U.S. and in this instance, they did not. In addition, they violated her 14th Amendment constitutional rights because they failed to not only take her before a judge, but also to take her to give her the opportunity of the right to counsel as well. And there is clear violations of her constitutional rights in that regard. And both, I believe it was two of the individuals that went and personally arrested Ms. Judith Henry were responsible for not taking her before a judge. In Bivens, did the agents have a warrant? Yes, they did have. I'm sorry, it was a warrantless search and seizure. All right, you're asking us to recognize a Bivens action for a search with a warrant. That's a new context, correct? Well, it is plaintiff's position that there wasn't a facially valid warrant in this instance because the individual that was named in the warrant was not the plaintiff in this instance. So it is the plaintiff's position that there was a warrantless arrest in this particular instance and that there is, in fact, a viable Bivens claim because here we have federal agents who entered into her home with a warrant that was not legal because it named her wrong. My argument is that, well, there was a warrant to arrest, issued to arrest your client. I disagree. It didn't have her name on it and her address on it? It didn't, the warrant does not contain an address. And although it did state Judith Henry, it was a Judith Henry, which was an absconder from... I know, I know they got the wrong person, but I'm asking what... The plaintiff and therefore it was unlawful. So the warrant had no address on it. So how did they, how did, what caused them to go to your client's house? Well, discovery is not complete, but based upon what we have determined thus far, it appears that there was an individual employee within the Pennsylvania probation and parole that did a search using the name Judith Henry and got a hit from the Department of Motor Vehicles in the state of New Jersey. And based upon that alone, they sent that information to the U.S. Marshal Service in Newark, New Jersey. And that was the only reason why they went to my client, the plaintiff's home. Do you have any case law support for the notion that a Bivens action will lie when agents act pursuant to a warrant and pick up the wrong person? No, Judge. There might be another distinguishing feature from Bivens, and that is, aside from the warrant issue in Bivens, the officers used excessive force. And you haven't alleged here that the agents used unreasonable or excessive force. Wouldn't that also create a new context? Well, that could potentially create a new context, but in this particular matter, I did not, you know, allege excessive force in this instance. But with respect to the Bivens claim, I don't believe that there is a new context at all. They entered into her home without a warrant. The warrant was not for her, and they placed her under arrest. And there was a warrant here, right? Yes, there was a warrant. And it wasn't in Bivens. It was an invalid warrant. It sounds like your argument is that an invalid warrant is no warrant at all. Correct, Judge. And it's unlawful because it wasn't, in fact, for my client. So if we accept your argument, does that mean that every time the U.S. Marshals Service is handed a warrant to execute, that they should then spend days, weeks, or months investigating the validity of the warrant? Is that what you would have us rule? I would have you rule that they should take at least a couple minutes to an hour to make sure that they don't unlawfully arrest an innocent individual because they have the technology and the tools within law enforcement to make sure that they have the correct person. Well, the only way to make sure you have the correct person is to take the person into custody and fingerprint them, correct? Correct. And that was not done in this instance. You concede that it's not a problem to take the person into custody. What you're really arguing is that that your client and others are entitled to a prompt verification that they are the right person. Well, I would also state that if they took the opportunity to take the time to verify all of the personal identification, even before an arrest to confirm that they have the right individual, then a constitutional violation would not occur and there would be no need for an unlawful arrest. Well, how do you know, again, how do you know whether you have the right person until you match the fingerprint? You have a fingerprint card for the absconder and then you have to take the prints of the person that you arrest. That's the only way to check, right? No. In this particular instance, there were photographs of the absconder from 1993 that identify personal characteristics with respect to that absconder. And so her physical appearance, as well as her height, her weight, and as I indicated, scars, as well as moles. There are just a multitude of ways to verify. Correct. Let's say the Bivens cause of action is foreclosed. Do you have any other avenues to get a remedy for the constitutional violation? Sure. Under the New Jersey Civil Rights Act, the state of New Jersey provides extra protections for its citizens. And in this case, Ms. Henry, we did allege a violation of the New Jersey Civil Rights Act. And it provides that any actor that violates the Constitution. The New Jersey Supreme Court has said that that act comes along with all qualified immunity defenses that you find in the federal system. Why wouldn't the agents still be protected by qualified immunity, even under the act? Well, in this instance, as I indicated, there has not been enough discovery at this time to make a determination whether or not they have adhered to all of the protocol under the, whether it's under the U.S. Attorney's Office or even with respect to, well, some of the officers were also part of the Sheriff's Department. They conspired, you know, along with county as well as city law enforcement as well with their task force. And to the degree that individuals did not comply with the state constitution as well as the federal constitution with respect to their police procedures is, you know, still to be determined with respect to discovery and whether or not they are entitled to immunity. And that's what Judge Hayden was setting forth in her opinion. What about the Federal Tort Claims Act? I'm sorry? What about the Federal Tort Claims Act? Have you filed anything under that so far? Well, I did file, I did file a claim, but nothing has happened thus far. It hasn't been denied. It's been over six months, but of course, Plaintiff doesn't believe that that would be an adequate remedy. In the federal case, you brought a cause of action under the Federal Tort Claims Act? No, Your Honor. Why not? Counsel's admitted that that that might be an avenue of relief for your client. Well, this plaintiff's position that it isn't adequate. You're looking for what? What's the remedy? Money damages here? Yes, Judge. And that sounds like under the Westfall Act, you're kind of consigned to the Federal Tort Claims Act. Well, Bivens has not been struck down. You know, it's still... But basically, what we've been told by the Supreme Court is that the facts that you have in the current case must map onto one of the cases that has allowed a Bivens action, be it Bivens or Davis or Carlson. And this is the only one that conceivably could be the case would be Bivens. But that was a warrantless arrest. And you're trying to say, well, somehow the warrant here was invalid, so therefore it would map onto Bivens. But I would I would suggest that that's probably not going to be the case. According to the Supreme Court. So why not go to Plan B if you want money damages and file a Federal Tort Claims Act? Because we believe that this is an instance where the U.S. Marshals Service should be held accountable under the Federal Tort Claims Act. That is essentially where you're having the marshals police themselves. That's like having, you know, the Fox, having the Fox guard the hen house here. And it's better left to the courts as well as a jury to hold the U.S. Marshals Service accountable for their constitutional violations in this matter. All right. Thank you very much, Ms. Adams. Mr. Ross, you have some rebuttal time. Thank you, Your Honor. Just two very quick points as to the federal defendant's entitlement to qualified immunity based on the alleged false arrest and subsequent detention. Plaintiff's counsel here, I think, has conceded that the marshals themselves held plaintiff for less than 24 hours and the Supreme Court in Baker v. McCollum held that detention for three days would not constitute a constitutional violation. So at minimum, that concession alone states that the federal defendant should have been entitled to qualified immunity. Moreover, the Supreme Court in Hill v. California held that when a mistaken arrest is affected based on a warrant supported by probable cause, that, too, does not state a constitutional violation. And the warrant here was supported by probable cause because although plaintiff was misidentified, the warrant itself was valid. And plaintiff's allegations do not suggest that the actual warrant itself, albeit old, was not invalid itself. And so although there was regrettably mistaken identification attached to that warrant, as this court recognized in Rothermel, that would not undermine the validity of the arrest itself. What happens if a warrant is made for John Miller, you know, or Bob Jones? How do agents find the right John Miller or Bob Jones? I'm not sure of the specifics, to be honest with you, Your Honor, but the those sorts of pre-investigative activities, I think, are not the ones that the federal defendants were alleged to have taken here in any event. So is there any kind of checking as to whether when you get a warrant that there's any database you go into to be sure? Hey, just let's just double check this. Be sure we got this is the right warrant for the right person. Again, I'm not entirely sure of the specifics and logistics for obtaining an arrest warrant, Your Honor, but here the federal defendants were not alleged to have had any role in that respect. And as this court recognized in Wilson v. Russo, they would have to either know that the warrant that they end up identifying information was false or recklessly disregard that fact. And there's no allegations that there would have been any basis for them to have either of those mental states here. OK, thank you. Absent further questions, we urge the court to reverse the claims against the federal or reverse the denial of the motion to dismiss with respect to the federal defendants. All right. Thank you, Mr. Ross. Thank you, Ms. Adams. The court will take the matter under advisory.